UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANUEL ORTIZ,

    Plaintiff,

v.

    CASE NO. 2:12-CV-10269
    JUDGE PAUL D. BORMAN
    MAGISTRATE JUDGE PAUL KOMIVES

JOE THURLOW and GARY KUIPER,

    Defendants.
                                    /

**REPORT AND RECOMMENDATION ON DEFENDANT THURLOW'S MOTION FOR SUMMARY JUDGMENT (docket #15) and DEFENDANT KUIPER'S MOTION TO DISMISS (docket #24)**

I.    RECOMMENDATION: The Court should grant defendant Thurlow's motion for summary judgment and should grant defendant Kuiper's motion to dismiss.

II.    REPORT:

A.    *Background*

Plaintiff Manuel Ortiz is a state prisoner who, at the times relevant to this action, was incarcerated at the Thumb Correctional Facility in Lapeer, Michigan. Plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. §§ 1981, 1983. Defendants are Joe Thurlow, MDOC Lapeer Laundry Plant Manager, and Hearings Officer Gary Kuiper.[1]

Plaintiff alleges that on June 9, 2010, while he was working in the laundry, another inmate told defendant Thurlow to "look at the Mexican." Defendant Thurlow did so, and went over to the area in which plaintiff was standing. Defendant Thurlow searched a laundry cart and found a cell

---

[1]The parties and the MDOC use the titles Hearings Officer and Administrative Law Judge (ALJ) interchangeably. Defendant Kuiper is now retired.

phone. On the same date, defendant Thurlow issued a major misconduct report charging plaintiff with possession of a contraband phone. *See* Compl., at 3-4. A hearing was held before defendant Kuiper on June 16, 2010. At the conclusion of the hearing, defendant Kuiper found plaintiff guilty of the major misconduct, and sentenced him to 10 days in administrative segregation. Plaintiff was subsequently transferred to the Saginaw Correctional Facility, and lost his job assignment. *See id*. at 4-5. Plaintiff sought judicial review in the Ingham County Circuit Court. The circuit court reversed the misconduct finding, concluding that the finding was not supported by the evidence. Plaintiff alleges that the misconduct report was false, and that both the false misconduct and the subsequent guilty finding by defendant Kuiper were based on his ethnicity. Plaintiff appears to assert claims based on the Due Process and Equal Protection Clauses of the Fourteenth Amendment, as well as a claim under § 1981.

The matter is before the Court on two motions filed by defendants. On March 28, 2012, defendant Thurlow filed a motion for summary judgment. He argues that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law on both plaintiff's equal protection and his due process claims. Plaintiff filed a response to this motion on April 23, 2012. On May 4, 2012, defendant Kuiper filed a motion to dismiss, arguing that he is absolutely immune from suit. Plaintiff filed a response to this motion on May 21, 2012. For the reasons that follow, the Court should grant both motions.

B. *Defendant Kuiper's Motion to Dismiss*

    1. *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided for in FED. R. CIV. P. 12(b)(6). In order for a court to dismiss a complaint for failure to state a claim,

it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim. *Id*. at 47. Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557 (brackets omitted).
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff

> armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

  2. *Analysis*

Although § 1983, by its language, provides for an action against "every person" who violates another person's rights under color of state law, the Supreme Court has recognized "that Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Most officials are protected by qualified immunity, which protects officials to the extent that their conduct does not violate clearly established rights of which a reasonable official would have been aware. However, the Court has also recognized "that some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability." *Buckley*, 509 U.S. at 268-69.

"A long line of th[e] [Supreme] Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam) (citing cases). As the Court has noted, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free

to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872). Further, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles*, 502 U.S. at 11; *see also, Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Immunity can be overcome only in two cases: (1) when the judge takes non-judicial actions, that is, actions not taken in the judge's official capacity; and (2) when the judge takes action, whether judicial or not, in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself[.]" *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). The inquiry focuses on the nature and function of the act, not on the act itself. *Id*.; *Mireles*, 502 U.S. at 13. Thus, a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988); *see also*, *Mireles*, 502 U.S. at 11 ("judicial immunity is not overcome by allegations of bad faith or malice"); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly."). Because of the functional nature of this immunity, it is has been extended to those, such as administrative law judges, who exercise quasi-judicial functions, and others "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985).

In *Shelley v. Johnson*, 849 F.2d 228 (6th Cir. 1988) (per curiam), the Sixth Circuit expressly held that Michigan hearing officers are independent and exercise adjudicatory functions. Under Michigan law, hearing officers are licensed attorneys, not under the supervision of the prisons' wardens, and subject to disqualification for bias. Similarly, Michigan law details their duties with respect to the taking of evidence and requires that their decisions be in writing and include findings of fact. Finally, hearing officer decisions are subject to appellate review by the Michigan courts.

*See Shelley*, 828 F.2d at 230 (discussing MICH. COMP. LAWS §§ 791.251-.255). Accordingly, the court concluded that the Michigan prisoner hearing officer's "role for all practical purposes is similar to that of an administrative law judge and as such he should be entitled to absolute judicial immunity[.]" *Id*. Thus, under *Shelley*, it is clear that an MDOC hearing officer "is entitled to absolute judicial immunity from damages for all judicial acts performed in the course of conducting misconduct hearings." *Branham v. Spurgis*, 720 F. Supp. 605, 607 (W.D. Mich. 1989); *accord Reynolds-Bey v. Harris*, 428 Fed .Appx. 493, 498 (6th Cir. 2011); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 755 (E.D. Mich. 2009) (Borman, J., adopting Report of Hluchaniuk, M.J.).

Plaintiff has not alleged or shown any facts that would meet one of the two exceptions to absolute judicial immunity. Plaintiff complains solely about defendant Kuiper's actions in finding him guilty at the misconduct hearing, and thus he does not allege that defendant Kuiper was acting in a non-judicial capacity. *See Reynolds-Bey*, 428 Fed. Appx. at 498 (hearing officer "was clearly acting in her 'judicial' capacity–presiding over a hearing and authoring a hearing report."). Nor does he assert that defendant Kuiper acted in the complete absence of jurisdiction. Defendant Kuiper is entitled to absolute judicial immunity even if he was acting in bad faith, *see Reynolds-Bey*, 428 Fed. Appx. at 499, and even if he acted in a discriminatory manner or with a discriminatory motive, *see Williams v. Moyer*, 9 Fed. Appx. 324, 326 (6th Cir. 2001) (judges and court employees entitled to absolute immunity with respect to plaintiff's claims that they discriminated against him on the basis of his race in connection with his divorce proceedings); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 524 (E.D.N.Y. 2010) (allegations that judge's rulings were motivated by discrimination or "retaliation for [the p]laintiff's filing of [a] lawsuit against the court and others" could not defeat judicial immunity). Because defendant Kuiper was acting in his judicial capacity,

6

he is entitled to absolute immunity. Accordingly, the Court should grant defendant Kuiper's motion to dismiss.

C. *Defendant Thurlow's Motion for Summary Judgment*

1. *Legal Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e). To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

  2. *Analysis*

Construed broadly, plaintiff's *pro se* complaint raises three possible claims against defendant Thurlow: (1) a due process claim based on the issuance of a false misconduct ticket; (2) an equal protection claim based on Thurlow's alleged discriminatory animus in issuing the ticket; and (3) a discrimination claim under 42 U.S.C. § 1981. The Court should conclude that defendant Thurlow is entitled to summary judgment with respect to each of these claims.

*a. Due Process*

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property,

8

without due process of law[.]" U.S. CONST. amend XIV, § 1. By its terms, therefore, the particular procedures required by the clause apply only to deprivations of "life, liberty, or property;" they do not apply to deprivations of other interests. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Nothing in plaintiff's complaint implicates a protected interest in life or property, and thus the only question is whether the major misconduct finding and resulting punishment implicate a liberty interest. The Court should conclude that they do not.

First, plaintiff cannot establish a violation of a protected liberty interest based on his allegation that the misconduct was false or not supported by the evidence. "A prisoner has no constitutionally protected immunity from being falsely accused of misconduct. The prisoner only has a right to due process of law during the disciplinary proceedings against him concerning the allegedly false misconduct charges." *Riley v. Church*, 874 F. Supp. 765, 768 (E.D. Mich. 1994) (Gadola, J.) (citations omitted), *aff'd,* 81 F.3d 161 (6th Cir. 1996); *accord Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing."); *Cromer v. Dominguez*, 103 Fed. Appx. 570, 573 (6th Cir. 2004); *Jackson v. Hamlin*, 61 Fed. Appx. 131, 132 (6th Cir. 2003). Plaintiff does not allege that he was not afforded a fair hearing: he was allowed to present his version of events, and obtained judicial review which resulted in a reversal of the misconduct finding. Nor can plaintiff challenge the findings of the hearing officer. "[F]ederal courts do not have jurisdiction to relitigate *de novo* the determinations made in prison disciplinary hearings. So long as some evidence in the record supports the

factfinder's decision, the factfinder's resolution of factual disputes, including credibility disputes between witnesses, is binding and final." *Mullins v. Smith*, 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998) (Gadola, J.) (citing *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455-56 (1985)). Here, according to Thurlow plaintiff was acting suspiciously and the cell phone was found in a laundry cart near to where plaintiff was standing, underneath a gown that plaintiff had just removed. *See* Def. Thurlow's Mot. for Summ. J., Ex. A, ¶¶ 4, 7. These facts constituted "some evidence" to support the misconduct finding.[2]

Further, plaintiff cannot establish a due process violation because the result of the hearing did not implicate a protected liberty interest. To show that his due process rights were violated plaintiff must show that his placement in segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484

---

[2]This conclusion is not altered by the fact that the state circuit court overturned the misconduct finding. Under Michigan law, the question before the state court was whether the hearing decision was "supported by competent, material, and substantial evidence on the whole record." MICH. COMP. LAWS § 791.255(4). The "substantial evidence" test of § 791.255(4) is more stringent than the "some evidence" test required by the Due Process Clause. *Cf. Branham v. Spurgis*, 720 F. Supp. 605, 608 (W.D. Mich. 1989) (citation omitted) (explaining that "[t]he Michigan statutory review procedure goes far beyond the requirements of due process" in part because "the Michigan courts require that the conviction be supported by 'competent, material and substantial evidence on the whole record,' not merely by 'some evidence.'"). *See generally*, *Hill*, 472 U.S. at 449, 455-56 (noting that the substantial evidence test is stricter than the some evidence test, and adopting the latter standard for due process challenges to prison disciplinary hearings). Because state law imposes a higher evidentiary hurdle, "the reversal of [the] disciplinary ruling on [judicial review] for insufficient evidence, does not necessarily establish a plaintiff's federal due process claim." *Sidney v. Fischer*, No. 9:09-CV-1326, 2012 WL 4450015, at *9 (Jan. 3, 2012) (citing *Sira v. Morton*, 380 F.3d 57, 76 n. 9 (2d Cir. 2004)), *magistrate judge's report adopted*, 2012 WL 4380392 (N.D.N.Y. Sept. 25, 2012); *see also*, *Nicholas v. Davis*, 74 Fed. Appx. 131, 134 (2d Cir. 2003) (fact that disciplinary determination was overturned for lack of evidence does not establish due process violation because "substantial, rather than 'some' evidence was required" under state law).

(1995). Broadly construed, plaintiff's complaint asserts that, as a result of the misconduct finding, he was placed in administrative segregation with a loss of privileges for 10 days, was transferred to another facility, and lost his job in the laundry.³ Plaintiff has made no allegations that his confinement in administrative segregation imposed any hardship on him significantly more restrictive than the normal incidents of prison confinement. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (placement in administrative segregation is generally not an atypical and significant hardship, even when such segregation has a substantial adverse impact on the prisoner); *see also*, *Neal v. District of Columbia*, 131 F.3d 172, 175 (D.C. Cir. 1998); *Holliman v. McAdorn*, No. 96 C 3701, 1997 WL 13704, at *2 (N.D. Ill. Jan. 8, 1997). Moreover, the loss of disciplinary credits does not implicate a protected liberty interest. As the Sixth Circuit has explained in rejecting a similar claim:

> As *Sandin* makes clear, "finding[s] of misconduct, even findings that could lengthen a prison sentence, do not implicate a protected liberty interest so long as the parole board retains discretion to release a prisoner based on a "myriad of considerations" and so long as the prisoner may "explain the circumstances behind the misconduct record" to the board. 515 U.S. at 487. In this instance, the major misconduct finding resulted in the accumulation of "disciplinary time" to [plaintiff's] sentence, a factor submitted to the parole board as one among many other considerations they may account for in deciding whether to grant early release. Mich. Admin. Code R. 791.5515(2), 791.7715. Because these findings represent just one among many factors that could affect the length of [plaintiff's] indeterminate sentence and because no one denies that [plaintiff] has the right to explain the circumstances of the misconduct charge, the findings do not inevitably affect the duration of [plaintiff's] sentence and do not effect an "atypical and significant hardship on [plaintiff] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483, 484; *see*

---

³It is not clear from plaintiff's complaint whether the transfer and loss of job were punishments imposed as a result of the misconduct finding. His complaint asserts only that he was transferred after the misconduct finding; he does not explicitly state that he was transferred because of that finding. Further, it is not clear whether plaintiff lost his job as a result of the misconduct finding, or simply because he had been transferred to a different facility. Because plaintiff is proceeding *pro se*, I broadly construe his complaint as alleging that the transfer and loss of his job resulted from the disciplinary finding.

*also Thompson v. Mich. Dept. of Corrs.*, 25 Fed. Appx. 357, 358 (6th Cir. 2002) (unpublished disposition) (concluding that a misconduct citation in the Michigan correctional system did not affect the prisoner's constitutional liberty interests).

*Nali v. Ekman*, 355 Fed. Appx. 909, 912 (6th Cir. 2009) (parallel citations omitted).

Nor can plaintiff show that his transfer to a different prison imposed an atypical and significant hardship. The Constitution does not protect a prisoner against every change in the conditions of his confinement. *See Meachum v. Fano*, 427 U.S. 215, 222 (1976). A prisoner has no inherent constitutional right to be incarcerated in a particular institution, *see id.* at 224, or to enjoy a particular security classification. *See Montanye v. Haynes*, 427 U.S. 236, 242 (1974). So long as the conditions at the new prison are not significantly harsher than those at the prison in which the inmate was incarcerated, *see Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005), transfer from one prison to another does not constitute an atypical and significant hardship. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005); *White v. Phillips*, 118 Fed. Appx. 1, 2 (6th Cir. 2004); *Holland v. Taylor*, 604 F. Supp. 2d 692, 700 (D. Del. 2009). Plaintiff does not allege, nor has he offered any evidence to show, that the conditions at the Saginaw Correctional Facility were significantly harsher than those at the Thumb Correctional Facility. Likewise, a prisoner has no liberty or property interest in a prison job, and loss of a prison job does not constitute an atypical and significant hardship. *See Gilbreath v. Clark*, 193 Fed. Appx. 741, 743 (10th Cir. 2006); *Williams v. Straub*, 26 Fed. Appx. 389, 390-91 (6th Cir. 2001); *King v. Dingle*, 702 F. Supp. 2d 1049, 1077 (D. Minn. 2010); *Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999). Because plaintiff was afforded the process he was due in connection with the disciplinary hearing, and because in any event the result of that hearing did not implicate a protected liberty interest, the Court should conclude that defendant Thurlow is entitled

to summary judgment on plaintiff's due process claim.

### b. Equal Protection

Plaintiff also alleges that defendant Thurlow violated his right to the equal protection of the laws by treating him differently than other inmates on account of his race or ethnicity. "An equal protection claim must assert that the plaintiff suffered class-based discrimination." *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000) (citing *McClesky v. Kemp*, 481 U.S. 249, 292 (1987)). Thus, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Suspect and quasi-suspect classes under the Equal Protection Clause include those based on race, religion, alienage, national origin, ancestry, gender, and illegitimacy. *See Owens v. Ventura County Super. Ct.*, 42 F. Supp. 2d 993, 998 (C.D. Cal. 1999).

Plaintiff does not allege, nor has he offered anything to show, that he was treated differently from any other inmate by defendant Thurlow on account of his race or ethnicity. Plaintiff's equal protection claim is based solely on the fact that the impetus for Thurlow to look at plaintiff was another inmate's direction to him to "look at the Mexican." Although plaintiff contends that he is not Mexican, he does not dispute defendant Thurlow's averment that plaintiff was the only Hispanic prisoner present at the time the inmate made this comment. In the law enforcement context, the courts have held that police do not violate the Equal Protection Clause by focusing on particular persons based on a description of the offender by a witness that includes that suspect's race. *See Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 388-89 (4th Cir. 2009); *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337-38 (2d Cir. 2000). That is all that plaintiff alleges here.

Defendant Thurlow was essentially given a description based on plaintiff's race, and plaintiff was the only one who matched that racial discrimination. Plaintiff does not allege, much less offer any evidence to show, that he was singled out by defendant Thurlow because of any racial animosity on Thurlow's part, rather than as a result of the description provided by another inmate. Plaintiff's unsubstantiated, personal belief that defendant Thurlow was motivated by his race is insufficient. *See Tolan v. Cotton*, 854 F. Supp. 2d 444, 465 (S.D. Tex. 2012); *cf. Turnboe v. Gundy*, 25 Fed. Appx. 292, 293 (6th Cir. 2001) ( "[C]onclusory allegations without any factual support fail[] to state an equal protection claim."). Accordingly, the Court should conclude that defendant Thurlow is entitled to summary judgment on plaintiff's equal protection claim.

### c. Section 1981

Finally, plaintiff appears to assert a claim based on 42 U.S.C. § 1981. "To establish a claim for racial discrimination under § 1981, a plaintiff must show (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in § 1981(a)." *Ejikeme v. Violet*, 307 Fed. Appx. 944, (6th Cir. 2009) (citing *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006)). With respect to the third element, the rights enumerated in § 1981(a) are the rights to "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property[.]" 42 U.S.C. § 1981(a). Here, plaintiff's claim fails on the second element. As explained above, plaintiff cannot show that defendant Thurlow discriminated against him on the basis of his race. Aside from the additional requirement imposed by the third element of a § 1981 claim, "the requirements of an equal protection claim mirror those of a claim under 42

U.S.C. § 1981." *Willie McCormick & Assocs., Inc. v. City of Detroit*, 61 Fed. Appx. 953, 957 (6th Cir. 2003) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988)). Because plaintiff cannot establish an equal protection claim, it follows that he cannot establish a § 1981 claim. *See Lollis v. City of Eufaula*, 249 Fed. Appx. 20, 27 (10th Cir. 2007); *Brown*, 221 F.3d at 339. Accordingly, the Court should conclude that defendant Thurlow is entitled to summary judgment on this claim.

D.  *Conclusion*

In view of the foregoing, the Court should conclude that defendant Kuiper is entitled to absolute immunity from plaintiff's claims, and the Court should therefore grant defendant Kuiper's motion to dismiss. The Court should also conclude that plaintiff has failed to raise a genuine issue of material fact with respect to whether defendant Thurlow violated his right to due process of law or discriminated against him under the Equal Protection Clause and § 1981. Accordingly, the Court should grant defendant Thurlow's motion for summary judgment.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

     Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/Paul J. Komives
                                            PAUL J. KOMIVES
                                            UNITED STATES MAGISTRATE JUDGE

Dated: 1/30/13

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on January 30, 2013.
>
>                               s/Eddrey Butts
>                               Case Manager